{REDACTED}
DECISION
This matter came before Associate Justice Samantha C. Skenandore, Associate Justice Trida A, Zunker, and Chief Justice Todd R. Matha on December 28, 2015, appealing the Trial Court’s Order (Granting Motion), CV 09-70 (HCN Tr. Ct., Sept. 18, 2015), and contesting the Trial Court’s subject matter jurisdiction over the dispute.[1] This Court convened *235 Oral Argument on March 26, 2016. Attorney William F. Gardner represented Appellant, [redacted]. Attorney Shari Le-Page Locante represented Appellee, [redacted].

PROCEDURAL HISTORY

On May 24, 2010, the Trial Court recognized a debt owed by the Appellant to the Appellee for a vehicle purchase, the construction of a garage, and attorney’s fees for a total of $40,000.00. Order (Final J.), CV 09-70 (HCN Tr. Ct„ May 24, 2010) at 11. Appellee sought recovery from Appellant’s [redacted], which was a prerequisite to receipt of his funds.[2] The Trial Court issued an Order wherein Appellant owed Appellee $40,000.00; however, the Trial Court denied the request for the release of Children’s Trust Fund (hereinafter “CTF”) monies for payment of the debt.
On April 16, 2015, Appellant filed a Motion and Order to Release Withheld Per Capita Funds to Respondent, [redacted]. On April 28, 2015 the Appellee filed Motion for Execution of Judgment and Affidavit in Support of Motion for Execution of Judgment. An Objection to Motion for Execution of Judgment was filed on May 8, 2015, by Appellant. The Trial Court convened a Motion Hearing on June 30, 2015. An Order was issued in favor of Appellee on September 18, 2015. Appellant filed a Motion for Reconsideration on September 28, 2015, which was denied by the Trial Court on October 28, 2015. Appellant filed a Notice of Appeal on December 28, 2015. This Decision follows.

FACTUAL HISTORY

This dispute has remained unresolved since it was first filed by Appellee on August 7, 2009, as the debt is still unpaid. The dispute involved a debt owed by the Appellant to Appellee for a vehicle purchase, the construction of a garage, and attorney’s fees. Because Appellee was an Elder, the matter was characterized as an Elder Protection action. Notably, the debt was undisputed.[3] The Order granted by the Trial Court recognized the debt, but did not permit release of funds from Appellant’s CTF. Because Appellant did not receive his high school diploma, he could not access his funds until he [redacted]. The Trial Court denied the request for release of funds from his CTF, but did acknowledge the debt of $40,000.00 owed by Appellant. On or around December 30, 2013, Appellant received more than $200,000.00 in trust fund monies. Order (Granting Mot.), CV 09-70 at 9.
In 2014, Appellee attempted to file a motion with the Trial Court for repayment. The motion was deemed deficient by the Supreme Court.[4] At some point in 2014, Appellee waived $26,000.00 owed to her, leaving the balance owed at $14,000.00. *236 Id. While Appellant continues to agree that he owes this debt, he has not made any effort to repay Appellee.[5] Additionally, the Trial Court noted that Appellee suffers from serious health issues. See Order (Denying Mot. For Recons.), CV 09-70 at 12.
In 2015, Appellant raised the argument that the Trial Court lacked subject matter jurisdiction for the first time.

DISCUSSION

This Court possesses the constitutional authority “to interpret and apply the ... laws of the Ho-Chunk Nation,” and may render binding “conclusions of law.” HCN Const., art., VII, §§ 4, 7(a). When reviewing questions of law, the Court employs a de novo standard of review, meaning it examines the matter anew. Hope B. Smith v. Ho-Chunk Nation et al, SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 5 n. 3. This appeal only involves a legal inquiry since the Appellant has presented no questions of fact for appellate consideration. Notice of Appeal, SU 15-13 (Dec. 28, 2015) at 3-5.
A. Subject Matter Jurisdiction
Subject matter jurisdiction “refers to the court’s power to hear and determine cases of general class or category.” Ho-Chunk Nation v. Harry Steindoif et al., SU 00-04 (HCN S.Ct., Sept. 29, 2000) at 3 (quoting Blaok’s Law Dictionary 1425 (6th ed. 1990)). This Court recently adjudged a dispute involving a question of subject matter jurisdiction. In Re Interest, [redacted] SU 14-06 (HCN S.Ct., April 7, 2015). In that case, the Court stated:
Once a litigant files an initial pleading, the Trial Court becomes obligated to perform its most rudimentary inquiry. The Court must preliminarily determine whether the alleged dispute “arisfes] under the Constitution, laws, customs, [or] the traditions of the Ho-Chunk Nation.” HCN Const., art. VII, § 5(a). In most instances, the Court must either discern or verify whether the Ho-Chunk Nation Legislature has “enacted a law to which the HCN Trial Court can apply to [a] case.” Steindorf SU 00-04 at 5. The existence of such a dispute “grants the HCN Courts subject matter jurisdiction,” id. at 3, and this jurisdictional underpinning must continue at every stage of the litigation, including throughout the appeal. Sadat v. Mertes, 615 F.2d 1176, 1188 (7th Cir.1980).[6] A court should independently monitor whether subject matter jurisdiction persists since a judicial action taken in its absence is presumptively null and void.
Id. at 2-3 (footnote renumbered) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)). Further, “[pjersonal jurisdiction alone does not confer subject matter jurisdiction.” Steindoif, SU 00-04 at 4.
*237 B. The Court Possesses Subject Matter Jurisdiction under the Elder PROTECTION Act, Which Was Operative in 2009 Because the Matter Involves Protection from Elder Exploitation.
One of the stated purposes of the Elder Protection Act is to protect elders from exploitation.[7] This case does not present an issue of whether exploitation of an elder occurred.[8] Nor does it present an issue of whether the terms of the agreement were valid. Appellant submitted written correspondence that he did not “make good” on his promise. Supra note 3. The debt due is undisputed and admitted by Appellant. When appellant did receive his funds of over $200,000.00 upon turning [redacted], he did not pay any portion of the debt due. Appellee is in ill health and demonstrated legitimate concern about whether she will ever receive repayment. This Court agrees with the Trial Court that “[t]he respondent’s failure to abide by a binding promise to reimburse the petitioner for accumulated charges constitutes exploitation.” Order (Final J.), CV 09-70 at 8.
Jurisdiction is explained under the Elder Protection Act operative as:
The Court has jurisdiction to hear a cause of action for protection and issue such an order if either petitioner or the respondent resides within the territorial jurisdiction of the Court as defined in Subsection 2 of Article I and Section 5 of Article VII of the Constitution of the Ho-Chunk Nation.
4 HCC § 1.20a. This language does not specify whether the jurisdiction singly referred to is personal jurisdiction or subject matter jurisdiction. A plain language reading reveals the definition implicitly addresses both subject matter and personal jurisdiction. The first part of the sentence states: “[t]he Court has jurisdiction to hear a cause of action for protection,” which addresses subject matter jurisdiction in that it speaks to the source of law from which the Court’s power of review derives, namely the Elder Protection Act. Id. The Elder Protection Act was implemented for protection of elders from abuse, neglect, and exploitation. Elder exploitation has occurred here through the failure to repay the debt. Subject matter jurisdiction is properly exercised.
The middle part of the same sentence refers to a geographical limitation and states: “if the petition or respondent resides within the territorial jurisdiction of the Court.” Id. Appellant has erroneously and singularly focused on this section of the definition in arguing the lack of subject matter jurisdiction, thereby confusing personal jurisdiction with subject matter jurisdiction. This section does not address a class or category of legal disputes, but rather physically limits the potential litigants by geography. Thus, this section addresses personal jurisdiction with its clear geographical limitation applied to po *238 tential litigants. Further, Appellant consented to personal jurisdiction by his participation in this lengthy suit, and thereby waived any argument regarding a lack of personal jurisdiction.
Both subject matter jurisdiction and personal jurisdiction exist, so the Trial Court properly exercised jurisdiction under the EldeR Peotection Act.
C. The Court Possesses Subject Matter Jurisdiction over Contract Claims and Personal Loan Disputes Arising Out of Ho-Chunk Tradition and Custom.
The Court also derives subject matter jurisdiction over this dispute arising out of tradition and custom. The Constitution of the Ho-Chunk Nation specifically designates the customs and traditions of the Ho-Chunk Nation as a source of law upon which the Court may base subject matter jurisdiction. Const., Art. VII, § 5(a); see also HCN Judiciary Act of 1995, § 2. The Ho-Chunk Nation Traditional Court has previously recognized that in the tradition and custom of the Ho-Chunk Nation, agreements between parties for the exchange of goods and services were recognized as binding, and that it proved wrong for one party to retain a benefit obtained from an agreement without providing the agreed upon compensation. Ho-Chunk Nation v. Ross Olsen, CV 99-81 (HCN Tr. Ct., Sept. 19, 2000) at 13. This traditional principle has been applied to personal loans. “The Court deems the extension of the noted traditional principle into the context of personal loans proves reasonable and just. Although the tribe would not have traditionally dealt in terras of currency, the sanctity and attendant responsibilities of an agreement were recognized as self-evident.” Conley v. Cloud, 2 Am. Tribal Law 289 (HCN Tr. Ct., Aug. 2, 2000) at 7. Therefore, the Court also has subject matter jurisdiction over this matter arising out of custom and tradition.
Finally, the Court notes that “[r]ecords of a Court hearing regarding Elder abuse, neglect, self-neglect, or exploitation are confidential.” 4 HCC § 1.7c. A public redacted version of this Decision shall be issued concurrently.
AFFIRMED.
EGI HESKEKJET.

. Appellant appeals the Trial Court’s Order dated Sept. 18, 2015. However, on September 28, 2015, Appellant filed a Motion for Reconsideration. See HCN R. Civ. P. 58(b). The Motion was denied on Oct. 28, 2015. See CV 09-70 (HCN Tr. Ct., Oct. 28, 2015). A *235 party may appeal a final judgment or order within sixty (60) days of its issuance by filing a Notice of Appeal with the Clerk of Court. See HCN R. App. P. 11(a). Appellant timely appealed the Order issued on Oct. 28, 2015. Because it was a Motion for Reconsideration that was denied, the underlying Order at issue on appeal is the Order issued on September 18, 2015.

. See Per Capita Ordinance, 2 HCC § 12.8b(l)(ii).

. Correspondence from [redacted], CV 09-70 (HCN Tr. Ct, Nov. 30, 2009) states:
To whom it may concern, I [redacted] do have an unsettled debt of Borrowed, [sic] money. I have failed to make good on promised to pay out of my trust fund. In conclusion I have no objections to the Claim [sic ] filed against me. [redacted] 11/30/09

. See [redacted] v. [redacted], SU 14-07 (HCN S.Ct., Apr. 7, 2015).

. One payment has been made to Appellee stemming from an August 19, 2014 Trial Court Order, which required withholding of 1800.00 per quarter from Appellant’s per cap-ita distribution payments. The first payment was received by Appellee for application upon the judgment owed. The second payment was subject to an Order (Imposing Stay), and since that time, no other payments have been made by Appellant. CV 09-70 (HCN Tr. Ct., Nov. 26, 2014); see also Order (Granting Mot.), CV 09-70 at 9.

. This Court references external case law as persuasive, not binding, authority, and in an attempt to demonstrate a consistent approach to basic legal principles. "[O]nly decisions by this [Cjourt are limitations on the Trial Court.” Jacob Lonetree et al. v. Robert Funmaker, Jr., et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001).

. The stated purpose of the Elder Protection Act of 2001 is
to establish Tribal law to protect the Elders of the Ho-Chunk Nation from abuse, neglect, and exploitation. The Ho-Chunk Nation honors, respects and protects its Elders. Our Elders possess unique and irreplaceable stores of knowledge, skill, and experience that enhance and enrich the lives of the entire Nation. The interests of the Nation, now and in the future, are advanced when our Elders can be confident they are protected from abuse, neglect and exploitation and are free to fully participate in the activities and proceedings of the Nation.
4 HCC § 1.2.

. Exploitation as defined under the Code in effect at the time states "[t]he improper use of an Elder by any person for personal gain or profit or otherwise.” 4 HCC § 1.5i(2).